# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENNETH MCGILL, JR., a minor, through his parents, Kenneth McGill, Sr., and Sheila McGill, as Next Friends, Plaintiff, v. MENARD, INC., d/b/a Menards, Inc., Defendant. | Case No. 11 C 4950<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth McGill, Jr., a minor, suing through his parents Kenneth McGill, Sr., and Sheila McGill as next friends, alleges that while unclogging snow from the chute of a snow blower sold by defendant Menard, Inc. ("Menards"), his hand was injured by the impeller.[1] (Not. Rem., Ex. A, Compl. ¶¶ 6-11.) [Dkt 1.] According to McGill, the snow blower was defective because it did not adequately warn the user about the dangers posed by the impeller when unclogging snow from the chute. (*Id.* ¶ 8.) A jury trial is scheduled to begin on October 21, 2013. [Dkt 121.] The court has jurisdiction under 28 U.S.C. § 1332,[2] and the parties have consented to the jurisdiction of the

---

[1] Although the caption of the complaint lists the McGill parents as suing as next friends and individually, there are no counts in the complaint on behalf the McGill parents. Kenneth McGill, Jr., is thus the sole plaintiff in this case. *See Blue v. People,* 585 N.E.2d 625, 626 (Ill. App. 2d Dist. 1992) ("A next friend is not a party to a suit but represents the real party, who, as a minor, lacks the capacity to sue in his own name.").

[2] McGill, who is an Illinois citizen, originally filed his suit in Illinois state court, but it was removed by then-defendant Briggs & Stratton Power Group, LLC ("Briggs & Stratton"), with federal

magistrate judge under 28 U.S.C. § 636. [Dkt 117.] Before the court are the parties' motions in limine.³ [Dkt 101, 105-113.] The motions are ruled on as set forth below.

**LEGAL STANDARD**

Generally, "[m]otions *in limine* are disfavored." *Mi-Jack Prods. v. Intl. Union of Operating Engrs., Loc. 150*, No. 94 C 6676, 1995 WL 680214 at *1 (N.D. Ill. Nov. 14, 1995). A motion in limine should only be granted when the evidence "clearly would be inadmissable for any purpose." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *see Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 4060293 at *1 (N.D. Ill. Sept. 14, 2012). The movant bears the burden of showing that the evidence that it seeks to preclude is "clearly inadmissible." *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partns. v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Denial of a motion in limine is *not* a ruling that the

---

jurisdiction premised on complete diversity of the parties under 28 U.S.C. § 1332. [Not. Rem., Dkt 1.] The complaint and notice of removal both describe Briggs & Stratton as being organized under Delaware law with its principal place of business in Wisconsin. (Not. Rem. ¶ 3 & Not. Rem., Ex. A, Compl. ¶ 4.) Menards, Inc. is a Wisconsin corporation with a principal place of business in Wisconsin. (Not. Rem. ¶ 3 & Not. Rem., Ex. A, Compl. ¶ 3.) The jurisdictional allegations about Briggs & Stratton were defective as the citizenship of an LLC is determined by the citizenship of its individual members. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). In any event, any potential jurisdictional problem was alleviated when Briggs & Stratton was voluntarily dismissed from the case, leaving Menards as the only defendant. [Dkt 50]; *see Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004).

³ Menards' motion to bar McGill's past medical expenses [dkt 103] was granted in a separate order. [Dkt 133.] Menards' omnibus motion in limine [dkt 100] that contains 17 separate motions will be addressed in a separate order.

material subject to the motion is necessarily admissible. Rather, it "means only that outside the context of trial, the court cannot determine whether the evidence in question is admissible." *Plair*, 864 F. Supp. at 69.

McGill's motion in limine no. 7 [dkt 111], which seeks to bar Menards from blaming the alleged defects on the snow blower's manufacturer or the company that bought the manufacturer's assets, is uncontested and therefore denied as moot. (Def.'s Resp. MIL at 11.) [Dkt 127.] The parties' remaining motions can be split into two categories: expert motions implicating Federal Rule of Evidence 702 and *Daubert v. Merell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and non-expert motions.

## DISCUSSION

**I.** *Daubert* **motions**

Federal Rule of Evidence 702 governs the admissibility of opinion testimony by expert witnesses:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert*, the Supreme Court emphasized the "gatekeeping" role of the

federal trial judge in ensuring that expert testimony is both relevant and reliable. 509 U.S. at 597. To make this determination, courts use a three-step analysis: "whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Ill. C. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

### A. McGill's Motion in Limine No. 1 to Bar Prof. Ralph Barnett

McGill moves to bar Menards' retained expert, engineering professor Ralph Barnett. (Pl.'s MIL No. 1) [Dkt 105.] McGill takes issue with Prof. Barnett's opinions regarding the credibility of the McGill family, how the accident happened, and the adequacy of the warnings. (*Id.*)

#### 1. *Opinions as to credibility*

Prof. Barnett believes that a warning label on the chute of the snow blower was removed because an outline of where the warning label would have been is visible on the chute. (Pl.'s MIL No. 1, Ex. A., Rep. Ralph Barnett at 17.) Prof. Barnett also believes that an identification label on the machine has been "tampered with" because it no longer appears to be in its original position. (*Id.* at 9, 23-24.) The McGill family maintains that they did not remove or alter any warnings on the snow blower, and that there was never any warning on the chute of the snow blower. (*Id.* at 12-17.) Prof. Barnett's report states that "[t]he testimony of the entire McGill family is completely

4

disingenuous regarding the existence of a chute mounted warning." (*Id.* at 17.) At his deposition, Prof. Barnett suggested that someone in the McGill family removed the warning on the chute or that McGill's attorney did. (Pl.'s MIL No. 1, Ex. B, Dep. Ralph Barnett at 41-46.)

McGill rightly takes issue with these opinions. (Pl.'s MIL No. 1 at 3-6.) First, an expert "cannot testify as to credibility issues" because those are for the trier of fact. *Goodwin v. MTD Prods. Inc.*, 232 F.3d 600, 609 (7th Cir. 2000); *see Nunez v. BNSF Ry. Co.*, No. 12-3018, ___ F.3d ___, 2013 WL 4829259 at *2-3 (7th Cir. Sept. 11, 2013). Second, Prof. Barnett's opinion about who may have removed the label from the chute is speculative and outside his realm of expertise. That being said, Prof. Barnett can certainly testify about why he believes that there was once a sticker on the chute of the machine, and why he believes that the identification label has been moved from its original position. He may not, however, testify that he finds the McGills' testimony to be not credible because that is a question for the jury, nor may he speculate about who removed the warning label or moved the identification label.

      2.    *Opinions about how the accident occurred*

The snow blower has a "deadman's handle" that is held down by the user while operating the machine; if the handle is not depressed, the impeller stops spinning. (Pl.'s MIL No. 1 at 6.) Prof. Barnett tested the deadman's handle once and found that the impeller stopped within 0.71 seconds of releasing the deadman's handle. (Barnett Rep. at 37.) Prof. Barnett opined in his report that "[i]f a second party was not engaging the right dead-man control and if the right handle was not tied down, then the plaintiff bypassed the control." (*Id.*) Prof. Barnett opined that "[i]t is more probable than not that the plaintiff held the right dead-man handle down with his left hand while he

5

inserted his right hand into the discharge chute." (*Id.*) At his deposition, Prof. Barnett explained that his suggested scenario was possible "[b]ecause the machine is compact." (Barnett Dep. at 84.)

McGill believes that this opinion is improper because it is contrary to a paper Prof. Barnett wrote in 1988 about the reliability of deadman's switches. (Pl.'s MIL No. 1 at 6-8 & Ex. D.) At his deposition, Prof. Barnett stated that the paper was irrelevant because it is old and he actually tested the deadman's control on the snow blower at issue. (Barnett Dep. at 90-91.) While Prof. Barnett's paper may provide material for cross-examination, it does not render his opinions about the deadman's handle in this case unreliable.

McGill also contends that Prof. Barnett's opinion regarding the deadman's handle must be barred because it is without factual basis and does not show "if it was even physically possible" for McGill to have held the handle down with his left hand while reaching into the chute with his right hand. (Pl.'s MIL No. 1 at 8-9.) There is a factual basis for Prof. Barnett's opinion. Based on his test of the deadman's handle, Prof. Barnett does not believe that the deadman's handle failed, and consequently, has posited a scenario in which the alleged injury occurred without the deadman's handle failing. McGill chides Prof. Barnett for not taking any measurements in reaching his conclusion that McGill would be able hold down the handle and reach into the machine simultaneously. (*Id.*) That line of argument, however, goes to the weight that a jury would give Prof. Barnett's testimony and not its admissibility. Accordingly, McGill's motion to bar Prof. Barnett's opinions as to how the accident occurred is denied.

   3. *Opinion on warnings*

Prof. Barnett believes that a warning on the auger housing that instructs the user to turn off

6

the engine before unclogging the chute provides adequate warning to the user about the dangers of the impeller. (Barnett Rep. 21-25.) When questioned at his deposition, Prof. Barnett stated that the user could read the warning label while operating the machine because he can read it and his eyesight is "dreadful." (Barnett Dep. at 72.) McGill argues that Prof. Barnett's opinion is unreliable because he did not measure the size of the text on the warning nor the distance between the operating position and the warning label. (Pl.'s MIL No. 1 at 10-11.) McGill further contends that the warning label is inadequate according to both the standards promulgated by American National Standards Institute ("ANSI") and Prof. Barnett's own research. (*Id.* at 11-13.) As with Prof. Barnett's opinions regarding the deadman's handle, Prof. Barnett's alleged failure to take adequate measurements and the alleged conflicts between his opinions and his own research or ANSI standards relate to the weight of his testimony and not its admissibility. McGill's motion to bar Prof. Barnett's opinion about the adequacy of the warning label is denied.

In sum, McGill's motion to bar Prof. Barnett from testifying is granted in part and denied in part. Prof. Barnett may not opine about the credibility of the McGill family, nor may he speculate about who may have removed the chute label or moved the identification label. He may, however, testify about the evidence that there was a label on the chute and the evidence that the identification label has been moved. He may also testify about his opinions regarding the deadman's handle and the adequacy of the warnings.

### B. Menards' Motion in Limine to Bar Dr. Robert Sugarman

Menards seeks to bar the testimony of McGill's retained expert Dr. Robert Sugarman. (Def.'s Mot. Bar Sugarman.) [Dkt 101.] Dr. Sugarman has opined that there was no adequate
7

warning on the snow blower near the discharge chute that would warn the user about the "danger presented by the high-speed rotating impeller." (Def.'s Mot. Bar Sugarman, Ex. A., Rep. Dr. Robert Sugarman at 8.) Dr. Sugarman further opined in his undated report that "there is no reason to believe, based on the material that I have reviewed, that the snow thrower was altered or manipulated in any way between the time of purchase and the time of this accident." (*Id.* at 9.) Dr. Sugarman stated that he had "personally inspected the subject snow thrower." (*Id.* at 3.)

Menards takes issue with aspects of Dr. Sugarman's opinion. First, Menards points to Dr. Sugarman's admission in his deposition that he had not actually examined the snow blower at the time he wrote his report, and in fact, had first examined the snow blower the day of his deposition. (Def.'s Mot. Bar Sugarman at 5 & Ex. B, Dep. Dr. Robert Sugarman at 61.) When asked why he would state in his report that he examined the snow blower, Dr. Sugarman explained: "I knew that I would be looking at the machine before I would be giving any testimony with regard to the report. And instead of amending the report, it made more sense to just put that in." (Sugarman Dep. at 61-62.) Menards argues that because Sugarman "bases his entire opinion report on photographs of the snow thrower taken by plaintiffs' counsel and the operator's manual," Dr. Sugarman's testimony lacks a reliable foundation. (Def.'s Mot. Bar Sugarman at 5.)

While Dr. Sugarman's anticipatory insertion of the statement in his report that he had examined the snow blower even though he had not examined it at the time the report was written was an ill-advised practice, it does not bar his testimony. Dr. Sugarman's failure to inspect the snow blower before writing his report only goes to the weight of his testimony not its admissibility. Menards has not pointed to any requirement that an expert personally examine the product in question in a products liability case, and the examination of the photographs, the user manual, and

8

other material provided a sufficient basis for Dr. Sugarman's opinion in his report.

Menards also takes issue with the fact that Dr. Sugarman never addressed the deadman's handle and never addressed Dr. Barnett's contention that the warning label had been removed. (Def.'s Mot. Bar Sugarman at 6-7.) Once again, these purported omissions only go to the weight that the jury might give Dr. Sugarman's testimony and not its admissibility. Accordingly, Menards' motion to bar Dr. Sugarman's testimony is denied.

## II.  Other Motions in Limine

### A.  McGill's Motion in Limine No. 2

McGill's motion in limine no. 2 seeks to bar any testimony relating to the criminal histories or civil judgments of the McGill parents. (Pl.'s MIL No. 2) [Dkt 106.] While agreeing that the misdemeanor convictions, arrests, and civil judgments mentioned in the motion should not be admitted, Menards argues that McGill, Sr.'s 2008 conviction for felony theft should be admissible to impeach his credibility. (Defs.' Resp. MIL at 8-9.) [Dkt 127.] According to McGill, Sr.'s deposition, he was helping a friend "with what I thought was his Bobcat, and it wound up not being his Bobcat that I was moving for him. So I caught a felony charge for that." (Def.'s LR 56.1 Stmt, Ex. 8, Dep. Kenneth McGill, Sr. at 9.) [Dkt 88.][4]

"The Federal Rules of Evidence, not provisions of state law, govern the admissibility of evidence in federal court." *Park v. City of Chicago*, 297 F.3d 606, 611 (7th Cir. 2002). The admissibility of prior convictions used for impeachment purposes is governed by Fed. R. Evid. 609, which provides that, subject to certain exceptions not applicable here, "for a crime that, in the

---

[4] "Bobcat" presumably refers to a piece of construction equipment made by the Bobcat Company and not an animal.

convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence . . . must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant." Fed. R. Evid. 609(a)(1)(A). "The rationale for . . . allowing a prior crime to be used to undermine testimony is that a person who has committed a serious crime is more likely than a law-abiding person to lie on the stand even if the case in which he is testifying has nothing to do with that crime." *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009). McGill agrees that the 2008 conviction falls under Rule 609(a)(1)(A), but argues that the felony conviction should be excluded because the prejudicial effect "to the minor plaintiff" of his father's felony conviction substantially outweighs its probative value under Fed. R. Evid. 403. (Pl.'s MIL No. 2 ¶ 10.) Further, he argues that "[c]rimes relating to property do not rise to the probative level of crimes involving false statement, embezzlement or criminal fraud." (*Id.*)

While a property theft conviction may not be as probative for truthfulness as those crimes that involve false statements, which must be admitted and are not subject to Rule 403 balancing under Fed. R. Evid. 609(a)(2), the conviction does have some probative value. *See Barber v. City of Chicago*, No. 12-2562, ___ F.3d ___, 2013 WL 3957736 at *11 (7th Cir. Aug. 2, 2013) ("A felony conviction for possession of stolen property . . . is not a crime of dishonesty per se, but it is more probative of dishonesty than other crimes, like murder or assault." (internal citation omitted)); *see also Cartwright v. City of Chicago*, No. 09 CV 4298, 2013 WL 3984434 at *5 (N.D. Ill, Aug. 2, 2013) (finding party's "conviction for theft of federal-government property" to be "highly probative of his character for truthfulness"); *Ford v. Bell,* No. 09 C 6851, 2012 WL 1416456 at *2 (N.D. Ill. Apr. 24, 2012) (stating that Rule 609(1)(1)(A) "does not require [a party] to demonstrate that the crimes are particularly probative of his credibility"). Further, it appears that McGill, Sr.'s credibility

10

may be an issue in this case because Menards has suggested that one of the warning labels on the snow blower was removed at some point, possibly by one of the McGills. Lastly, McGill's motion only contains blanket assertions of unfair prejudice and fails to point to or explain any specific prejudice that may be unfair.

Accordingly, McGill's motion in limine is denied as to McGill, Sr.'s 2008 conviction for felony theft, and is denied as moot as to the other misdemeanor convictions, arrests, and civil judgments referenced in the motion.

### B. McGill's Motion in Limine No. 3

McGill seeks to "bar any testimony, comments, inferences, or argument that the McGills did not purchase the subject snow blower from Menards." (Pl.'s MIL No. 3 at 2.) [Dkt 107.] McGill states that, although the McGills "no longer have a receipt for their purchase, [Menards] has produced *nothing* to contradict the McGills' sworn testimony that Menards was the seller of the product." (*Id.*) Menards responds that "[s]urely the Plaintiffs can be questioned as to whether they have a receipt to show they purchased the snow blower at Menards." (Def.'s Resp. MIL at 9.)

McGill bears the burden of showing that they purchased the snow blower at Menards, and Menards is free to question McGill's proof. Accordingly, McGill's motion in limine no. 3 is denied.

### C. McGill's Motions in Limine Nos. 4 and 8

McGill's motions in limine nos. 4 and 8 are related to Prof. Barnett's anticipated testimony. Motion in limine no. 4 seeks to bar any comment, testimony, or inference that McGill "circumvented the 'deadman's switch' or otherwise misused the snow blower." (Pl.'s MIL No. 4 at 2-3.) [Dkt

108.] Similarly, McGill's motion in limine no. 8 seeks to bar Menards from "any attempt" to claim that "McGill misused the snow blower." (Pl.'s MIL No. 8 at 2.) [Dkt 112.] Menards "intends to argue that a plausible explanation of the plaintiff's injuries is that he did in fact bypass the dead man switch." (Def.'s Resp. MIL at 11.)

McGill's motions gloss over the differences between the affirmative defense of "misuse" and the common vernacular use of the word "misuse." It is useful to explain the distinction, however, because "misuse" is an affirmative defense to strict liability, which is one of the theories of liability alleged in McGill's complaint. The misuse defense arises when a product "is used for a purpose neither intended nor reasonably foreseeable by the defendant based on an objective standard," and it "operates to reduce a plaintiff's recovery by the amount of fault apportioned to him." *Arellano v. SGL Abrasives,* 617 N.E.2d 130, 136 (Ill. App. 1st Dist. 1993). "The manner in which the particular purpose was being accomplished is not an issue under a theory of misuse." *Id.* For example, in *Arrelano*, when a plaintiff failed to use a guard while operating a grinding wheel, it was not misuse but, if anything, contributory negligence, which "is not a defense to strict liability." *Id.* at 137.

Based on the parties' jury instructions submitted with the pretrial order, there is no indication that Menards is seeking to establish misuse as an affirmative defense. Testimony about the snow blower's "misuse," in the common vernacular sense, may still be relevant, however, because the instructions indicate that Menards seeks to defend against McGill's allegation of negligence by introducing evidence that he was contributorily negligent in bypassing the deadman's handle, thereby "misusing" the snow blower. (*See* Pretrial Order, Sch. H, Jury Instructions.) [Dkt 115.]

As discussed above, given that Prof. Barnett found the deadman's handle to operate correctly, he is allowed to outline a scenario in which McGill could have bypassed the deadman's handle.

Thus, McGill's motion in limine no. 4 to bar any mention that he may have bypassed the deadman's handle is denied. Motion in limine no. 8 is denied as moot as to the affirmative defense of misuse because Menards has not indicated that it seeks to mount such a defense, and denied to the extent that it seeks to bar any mention that McGill may have "misused" the snow blower.

### D. McGill's Motion in Limine No. 5

McGill's motion in limine no. 5 also deals with Prof. Barnett's opinions because it seeks to bar "any testimony, comments, arguments, or inference of any kind that Plaintiffs, or anyone affiliated with the Plaintiffs including their attorneys, removed or moved any of the product warning labels from the subject snow blower." (Pl.'s MIL No. 5.) [Dkt 109.] According to McGill, "[a]ny inference of evidence tampering is completely unsupported, and any references to such conduct would critically prejudice Plaintiffs' case." (*Id.* ¶ 3.) McGill adds that "[e]ven if there was once a label where Barnett claims, a point not conceded by plaintiffs, such a label could have fallen off over time and with usage in snow conditions." (*Id.*) Menards states that it "is not offering any evidence nor does defense counsel intend to make any inference that plaintiff's counsel removed the warning label from the chute to the snow blower." (Def.'s Resp. MIL at 10.)

In general, "counsel is entitled to make arguments based on reasonable inferences from the evidence." *Littlefield v. McGuffey*, 954 F.2d 1337, 1346 (7th Cir. 1992) (internal quotation omitted). As stated above, while Prof. Barnett may not express an opinion about who may have moved or removed the labels at issue, he may opine that it appears that there was a label on the chute of the machine and that the identification label appears to have been moved. Counsel may argue those reasonable inferences that can be drawn from that opinion. What inferences are reasonable will

13

depend on the evidence presented at trial. At this point in the case, the court cannot conclude that an inference or argument that the McGills removed the label is an unreasonable or impermissible inference or argument. Therefore, McGill's motion in limine no. 5 is denied as moot as to any reference that McGill's lawyers removed the labels at issue, and is denied without prejudice to any objection made at trial as to any argument or inference that the McGills removed the labels.

### E. McGill's Motion in Limine No. 6

McGill seeks a ruling allowing him to testify "as to the general nature of medical injuries," and barring Menards from offering opinions that his injuries were not caused by the snow blower. (Pls.' MIL No. 6) [Dkt 110.] Menards states that it "does not intend to offer any opinions that the plaintiff's injuries to his hand were not a direct cause [sic] of the snow blower incident," but does not agree that McGill "can testify as to what his injuries were and the surgeries that he underwent" because "such testimony would be hearsay." (Def.'s Resp. MIL at 10.)

The Seventh Circuit has stated that "[a] witness does not need to be a doctor to discuss his or her health in general terms." *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998) (citing Fed. R. Evid. 601, 701, 702 and upholding district court's ruling allowing plaintiff to testify that he had a hernia and bleeding ulcers). "While medical evidence may be difficult to understand without the use of an expert opinion, courts have routinely held that lay individuals are certainly capable of reliably understanding and testifying to their own medical condition." *Gage v. Metro. Water Reclamation Dist. of Greater Chicago*, 365 F. Supp. 2d 919, 929 (N.D. Ill. 2005). A witness may also testify about his pain and suffering. *See Hendrickson v. Cooper,* 589 F.3d 887, 892-93 (7th Cir. 2009). In general, however, a lay person may not give an opinion as to the causation of a health problem or

"offer a detailed medical diagnosis (or self-diagnosis)." *See, e.g., Haack v. Bongiorno*, No. 08 C 2488, 2011 WL 862239 at *4 (N.D. Ill. Mar. 4, 2011).

Whether McGill's testimony about his injuries is admissible will depend on the content of the testimony. McGill has not pointed to specific pieces of testimony that are contested and thus any ruling on objections to McGill's testimony will be reserved for trial. Accordingly, McGill's motion is denied as moot with regards to any opinion evidence that McGill's injuries were not caused by the snow blower, and denied as premature with regards to the admissibility of McGill's lay testimony about his injuries.

### F. McGill's Motion in Limine No. 9

McGill seeks to bar Menards from calling any witness other than Prof. Barnett and Jason Larson, a Menards representative, for failure to initially disclose any other witnesses under Fed. R. Civ. P. 26(a)(1). (Pl.'s MIL No. 9.) [Dkt 113.] According to the witness lists submitted by the parties in the pretrial order, in addition to Prof. Barnett and Larson, Menards may call McGill, his parents, and Ed Self, a retired employee of former defendant Briggs & Stratton who was deposed and appears on McGill's witness list. (Final Pretrial Order, Sch. D.; Def.'s MIL Resp. at 11-12.)

Rule 26(a)(1) requires that parties must provide the name and contact information of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Under Rule 26(e), a party must supplement its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise

been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). If any party does not "identify a witness as required by Rule 26(a) or (e)," then they are prevented from using that "witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Here, it is questionable whether Menards was required to supplement its initial disclosures formally by adding McGill and his family and a Briggs & Stratton employee to its list of Rule 26(a)(1)(A)(i) witnesses. The McGill parents were certainly known as potential witnesses, and Mr. Self was made known to the parties during discovery. Moreover, any failure would be harmless because all of the witnesses have been deposed. Accordingly, McGill's motion in limine no. 9 is denied.

**Conclusion**

For the reasons stated above, Menards' motion to bar Dr. Sugarman [101] and McGill's motions in limine nos. 2 through 9 [106, 107, 108, 109, 110, 111, 112, 113 ] are denied as detailed above. McGill's motion in limine no. 1 [105] is granted in part and denied in part.

_____
Geraldine Soat Brown
United States Magistrate Judge

**DATE:** September 17, 2013